**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARK E. MCKINNEY, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

   v.

MORGAN STANLEY, MORGAN
STANLEY SMITH BARNEY LLC, and
E*TRADE SECURITIES LLC,

              Defendants.

---

Case No. 24-cv-8860-VEC

CLASS ACTION

 

**PLAINTIFF AND PROPOSED-INTERVENOR THOMAS SIMMONS'**
**MEMORANDUM OF LAW IN SUPPORT OF HIS REVISED MOTION**
**TO INTERVENE AND TO TRANSFER THIS ACTION**
**TO THE DISTRICT OF NEW JERSEY**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 4

    A.    The *E\*TRADE Litigation* ..................................................................... 4

        1.    Factual Background ................................................................. 4

        2.    Procedural Background............................................................ 5

    B.    McKinney's Bid to Circumvent the E\*TRADE Litigation by Filing an Identical Case in this District and a Meritless Section 1407 Motion Before the JPML ..................................................................................... 6

III.    ARGUMENT ................................................................................................... 11

    A.    Plaintiff-Intervenor Meets the Standards for Intervention..................... 11

    B.    The Court Should Transfer *McKinney* to Join the *E\*TRADE Litigation* in the District of New Jersey..................................................................... 13

    C.    The Dubious Motion Seeking Centralization Before the JPML Further Supports Section 1404 Transfer......................................................... 17

IV.    CONCLUSION................................................................................................ 19

## TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*Andreas-Moses v. Hartford Fire Ins. Co.*,
  2017 WL 5634709 (N.D.N.Y. Oct. 30, 2017) ......................................................16

*Arthur v. Sallie Mae, Inc.*,
  2011 WL 13127651 (W.D. Wash. June 6, 2011).................................................11

*Bartolucci v. 1-800 Contacts, Inv.*,
  245 F.Supp.3d 38 (D.D.C. 2017) .......................................................................18

*In re Belviq (Lorcaserin HCl) Prod. Liab. Litig.*,
  555 F.Supp.3d 1369 (J.P.M.L. 2021)..................................................................19

*In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  2024 WL 3629067 (J.P.M.L. Aug. 1, 2024)...................................................10, 19

*Cain v. Twitter, Inc.*,
  2017 WL 1489220 (S.D.N.Y. Apr. 25, 2017).....................................................15

*In re COVID-19 Bus. Interruption Prot. Ins. Litig.*,
  482 F.Supp.3d 1360 (J.P.M.L. 2020)..................................................................18

*Dickstein v. Able Telcom Holding Corp.*,
  192 F.R.D. 331 (N.D. Ga. 2000)........................................................................11

*Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*,
  260 F.Supp.3d 401 (S.D.N.Y. May 12, 2017) .........................................13, 15, 16

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
  928 F.Supp.2d 735 (S.D.N.Y. 2013)...................................................................15

*Gottlieb v. U.S. Sec. & Exch. Comm'n*,
  723 F. App'x 17 (2d Cir. 2018) ..........................................................................16

*Harris-Clemons v. Charly Trademarks Ltd.*,
  751 F. App'x 83 (2d Cir. 2018) ..........................................................................11

*Hound Partners Offshore Fund, LP v. Valeant Pharm. Int'l, Inc.*,
  2018 WL 1940437 (S.D.N.Y. Apr. 24, 2018).....................................................14

*IKB Int'l S.A. v. Wilmington Tr. Co.*,
  2017 WL 4084052 (S.D.N.Y. Sept. 14, 2017)...............................................13, 14

*Jeffrey v. DTG Operations, Inc.*,
  2020 WL 1536323 (E.D.N.Y. Mar. 31, 2020) ....................................................16

*Jones v. Walgreen Co.*,
    463 F.Supp.2d 267 (D. Conn. 2006) ..................................................................16

*McCausland v. S'holders Mgmt. Co.*,
    52 F.R.D. 521 (S.D.N.Y. 1971) ........................................................................11

*Mitchell v. Annucci*,
    2023 WL 8073106 (2d Cir. Nov. 21, 2023) ......................................................13

*Morris v. Charles Schwab Corp.*,
    2024 WL 5125516 (M.D. Fla. Dec. 16, 2024) ........................................... *passim*

*Multiwave Sensor v. Sunsight Instruments, LLC*,
    2017 WL 1498058 (S.D.N.Y. Apr. 26, 2017) ...................................................14

*Oleg Cassini, Inc. v. Serta, Inc.*,
    2012 WL 844284 (S.D.N.Y. Mar. 13, 2012) ....................................................16

*Olin Corp. v. Lamorak Ins. Co.*,
    325 F.R.D. 85 (S.D.N.Y. 2018) ........................................................................12

*Quinn v. JPMorgan Chase Bank, N.A.*,
    2020 WL 3472448 (S.D.N.Y. June 24, 2020) ..................................................17

*Texas Health Mgmt. LLC v. HealthSpring Life & Health Ins. Co. LLC*,
    315 F.Supp.3d 814 (S.D.N.Y. 2018) ................................................................17

*Thomas v. Apple-Metro, Inc.*,
    2015 WL 505384 (S.D.N.Y. Feb. 5, 2015) .......................................................16

*Torres v. Sher Tremonte*,
    2024 WL 2060112 (S.D.N.Y. Apr. 1, 2024) .....................................................16

**STATUTES**

28 U.S.C. § 1404 ...................................................................................................... *passim*

28 U.S.C. § 1407 ...................................................................................................... *passim*

**OTHER AUTHORITIES**

Wright, Miller & Kane, 7B Fed. Prac. & Proc. Civ. § 1799 (3d ed.) ...........................11

Federal Rules of Civil Procedure
    Rule 23 ...............................................................................................................11
    Rule 24 ...............................................................................................................11

Rules of Procedures of the Judicial Panel on Multidistrict Litigation
    Rule 2.1(d) .........................................................................................................17

Proposed intervenor Thomas Simmons ("Plaintiff-Intervenor") is plaintiff in *Simmons v. E\*TRADE Securities LLC, et al.*, No. 2:24-cv-11341 (D.N.J.) ("*Simmons*"), a proposed class action against E\*TRADE concerning its underpayment of interest to E\*TRADE customers who participated in E\*TRADE's cash sweep programs, which is currently pending in the U.S. District Court for the District of New Jersey. In accordance with this Court's Order to "file a revised motion to intervene and transfer not later than Tuesday, February 4, 2025" (ECF No. 36), Plaintiff-Intervenor hereby submits this revised motion and respectfully seeks to intervene for the limited purpose of requesting transfer of this action pursuant to 28 U.S.C. § 1404 to the District of New Jersey for consolidation with the *E\*TRADE Litigation*.[1]

## I.    INTRODUCTION

A nearly identical class action on behalf of E\*TRADE customers is already pending before Judge Esther Salas in the District of New Jersey, and this action should be transferred to that court. Over a year ago, Sergey Burmin and Kenneth W. Luke (together, "Burmin") filed a proposed class action in the District of New Jersey against E\*TRADE Securities LLC ("E\*TRADE") and its affiliate Morgan Stanley Smith Barney LLC ("MSSB" and "E\*TRADE from Morgan Stanley"), alleging misconduct related to Defendants' cash sweep programs. *See Burmin v. E\*TRADE Securities LLC*, No. 24-cv-603 (D.N.J. Feb. 1, 2024) (Salas, J.). The *Burmin* case has progressed significantly, as discovery has commenced and a motion to dismiss has been fully briefed.

---

[1] Given the expected consolidation in the District of New Jersey of *Simmons* with the currently-pending *E\*TRADE Litigation* in the U.S. District Court for the District of New Jersey (*Burmin v. E\*TRADE Securities LLC*, No. 24-cv-603 (D.N.J.) (Salas, J.)), the two actions are collectively referred to herein as the "*E\*TRADE Litigation*." Unless otherwise indicated, (i) references to "Graziano Decl." are to the Declaration of Salvatore J. Graziano, filed herewith; (ii) references to "Ex. __" are to the exhibit to the Graziano Decl.; and (iii) all internal citations and internal quotations are omitted and all emphasis is added.

Plaintiff-Intervenor Simmons identified that the scope of the *Burmin* action did not cover all potential class members. As a result, he initiated the *Simmons* action to address the full scope of E*TRADE's misconduct, bringing claims on behalf of himself and a proposed class of E*TRADE and E*TRADE by Morgan Stanley clients in the District of New Jersey on December 19, 2024. Plaintiff-Intervenor Simmons plans to seek consolidation of *Simmons* with *Burmin* in order to most effectively and efficiently litigate the *E*TRADE Litigation*.

Plaintiff McKinney ("McKinney") and his counsel, Robbins Geller Rudman & Dowd LLP ("RGRD") and the Law Office of Alfred G. Yates, Jr., P.C., chose a different path. In late November 2024—over nine months after the filing of *Burmin* and five months after the parties fully briefed the motion to dismiss in *Burmin*—McKinney filed his complaint in this District rather than in New Jersey, where Judge Salas was already presiding over claims on behalf of a class that included the same E*TRADE customers.

In addition, on October 11, 2024—just over a month prior to filing the *McKinney* action—RGRD filed a class action complaint in this District alleging cash sweep misconduct against Morgan Stanley, which acquired E*TRADE in October 2020, and chose not to name E*TRADE as a defendant. *See Safron Capital Corp. v. Morgan Stanley*, No. 1:24-cv-7750 (S.D.N.Y.) ("*Safron*"). The *Safron* action was itself duplicative of an earlier-filed complaint in this District, *Estate of Bernard J. Sherlip v. Morgan Stanley*, No. 1:24-cv-4571 (S.D.N.Y. June 14, 2024) ("*Sherlip*"), which asserted parallel claims on behalf of the same class of Morgan Stanley customers at issue in *Safron*. Then, after filing *McKinney* in this District, RGRD requested consent of all parties to consolidate *McKinney* with *Safron* and *Sherlip*, despite the fact that neither *Safron* nor *Sherlip* name E*TRADE as a defendant, nor identify E*TRADE customers as members of the class they seek to represent. Because E*TRADE had an entirely distinct cash sweep program from

Morgan Stanley prior to the acquisition and later transition of client accounts, Defendants Morgan Stanley, MSSB, E*TRADE and the *Sherlip* Plaintiffs uniformly opposed RGRD's request.

Between the filing of *Safron* and *McKinney*, RGRD also filed an application before the Judicial Panel on Multidistrict Litigation (the "JPML") on October 30, 2024, seeking centralization under 28 U.S.C. § 1407 in the Southern District of New York of dozens of separate cash sweep-related actions currently pending against 11 separate financial institutions. Because the cash sweep litigations do not share common facts across financial institutions, and because the parties have been self-organizing such litigation through transfer under 28 U.S.C. § 1404, both Plaintiff-Intervenor and all financial institutions that have taken a position filed responses in opposition to centralization. McKinney's filing of this copycat class action in the Southern District of New York can only be explained as an attempt to bypass the *Burmin* action's significant progression, bolster RGRD's leadership petition in *Sherlip*, and sow further confusion with regards to the illusory "need" for an MDL.

Plaintiff-Intervenor Simmons respectfully submits that this Court should transfer the instant *McKinney* action to the District of New Jersey where the first-filed E*TRADE action is pending. Courts across the country, including in this District, routinely grant motions to transfer under similar circumstances—and have done so with respect to similar later-filed class actions alleging misconduct in connection with other financial institutions' cash sweep programs in nearly identical circumstances as those here. *See, e.g.*, *Morris v. Charles Schwab Corp.*, 2024 WL 5125516, at *2 (M.D. Fla. Dec. 16, 2024); *Lourenco v. Ameriprise Financial, Inc.*, No. 24-cv-2285 (C.D. Cal. Jan. 17, 2025), ECF No. 49 (Ex. C). Transfer under Section 1404 is the appropriate mechanism for coordinating the various actions against E*TRADE, and that is the precise remedy that Plaintiff-Intervenor's present motion now seeks.

For the reasons set forth below, Plaintiff-Intervenor Simmons respectfully requests that the Court permit him to intervene for the limited purpose of seeking transfer of this action to the District of New Jersey for consolidation with the *E\*TRADE Litigation*, where the *McKinney* action unquestionably belongs.

## II.     BACKGROUND

### A.     The *E\*TRADE Litigation*

#### 1.     Factual Background

Like this case, the *E\*TRADE Litigation* stems from E\*TRADE's cash sweep programs (the "Programs"), whereby E\*TRADE, while purportedly acting as its clients' agent, "sweeps" uninvested cash balances in clients' accounts into interest-bearing accounts that E\*TRADE selects—ostensibly to offer its customers an FDIC-insured vehicle to hold cash and generate returns. *Burmin*, ECF No. 1 at ¶23; *McKinney*, ECF No. 43 at ¶¶15-16. E\*TRADE controls and has discretion over virtually all aspects of the Programs, including establishing and maintaining the Programs, determining customers' eligibility to participate in the Programs, choosing the banks at which swept funds are deposited, and setting the interest rates secured for or paid to customers. *See*, *e.g.*, *Simmons*, ECF No. 1 at ¶¶30-32.

Upon opening an account with E\*TRADE, customers were automatically enrolled in the Programs, and E\*TRADE contractually agreed to establish, maintain, and operate the Programs as its customers' "agent." *Simmons*, ECF No. 1 at ¶¶26-29. E\*TRADE owed fiduciary duties to its customers in establishing and maintaining the Programs, by virtue of serving as their agent as to those activities, and it also owed them fiduciary duties in connection with the operation of the Programs by virtue of the control and discretion it exercised over them. *See*, *e.g.*, *Simmons*, ECF No. 1 at ¶¶3, 44. But rather than acting in its clients' best interests, as required of an agent or fiduciary, E\*TRADE used the Programs to generate enormous fees for itself at the expense of its

clients. Specifically, E*TRADE secured for or paid to clients *de minimis* returns, while using clients' cash to generate massive returns for itself as interest rates spiked and keeping for itself the vast majority of compensation that banks paid to use that cash. For example, E*TRADE pays (and has paid since 2020) many of its clients with cash sweep accounts interest of only 0.01%— approximately *1/500th* of the current short-term Treasury Bill rate. *Simmons*, ECF No. 1 at ¶6.

E*TRADE was acquired by Morgan Stanley on October 2, 2020. *Simmons*, ECF No. 1 at ¶14. Morgan Stanley also administers a cash sweep program through MSSB, referred to as the Bank Deposit Program ("BDP"). *Sherlip*, ECF No. 54 at 3. However, prior to E*TRADE's integration into Morgan Stanley, the E*TRADE Programs were entirely distinct from the MSSB BDP. The E*TRADE Programs, including their governing contracts, disclosures, and processes were separate from the MSSB BDP, and neither Morgan Stanley nor MSSB had any involvement with them. *Id.* at 4. It was not until approximately September 2023 that the MSSB BDP became a sweep option for E*TRADE customers. *Id*.

### 2.    Procedural Background

On February 1, 2024, Burmin filed in the District of New Jersey the first class action against E*TRADE relating to its Programs. The *Burmin* litigation was commenced on behalf of all persons or entities who maintained E*TRADE or "E*TRADE from Morgan Stanley" retirement accounts at any time beginning February 1, 2018. The *Burmin* litigation has since progressed significantly. Defendants' motion to dismiss has been fully briefed since June 17, 2024, and discovery is ongoing. *Burmin*, ECF Nos. 38, 41.

On December 19, 2024, Plaintiff-Intervenor filed the *Simmons* action in the District of New Jersey, which also alleges misconduct in E*TRADE's Programs. *Simmons* partially overlaps with *Burmin*, but the actions differ in several significant respects. For instance, the class in the *Burmin* action only encompasses retirement accounts subject to the Programs, whereas *Simmons* is brought

on behalf of all clients with cash deposits or balances in the Programs, including but not limited to the retirement accounts at issue in *Burmin*. *Compare Burmin*, ECF No. 1 at ¶124, *with Simmons*, ECF No. 1 at ¶¶120, 121. Relatedly, while *Burmin* only asserts a claim for breach of contract on behalf of the retirement accountholders, *Simmons* asserts breach of contract claims on behalf of both its larger class and the retirement account subclass, as well as additional claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. *Compare Burmin*, ECF No. 1 at ¶¶128-132, *with Simmons*, ECF No. 1 at ¶¶133-159. Furthermore, *Simmons* cites rigorous proprietary data, absent from *Burmin*, as a comparator for E*TRADE's unreasonably low rates. *Compare Burmin*, ECF No. 1, *with Simmons*, ECF No. 1 at ¶¶94, 100. Recognizing the substantial overlap between the two actions, Plaintiff in *Simmons* will seek consolidation with *Burmin* in order to prosecute the *E*TRADE Litigation* most efficiently and effectively.

Separate and apart from the *E*TRADE Litigation* in the District of New Jersey, litigation alleging cash sweep misconduct against Morgan Stanley has been proceeding in this District since June 14, 2024. Specifically, *Sherlip* and *Safron* were consolidated upon consent of the parties on December 9, 2024, and an Amended Complaint was filed in *Sherlip* on October 10, 2024. *Sherlip*, ECF Nos. 48, 57, 40. Neither *Sherlip* nor *Safron* named E*TRADE as a defendant. *See Sherlip*, ECF No. 40; *Safron*, ECF No. 1.

### B.    McKinney's Bid to Circumvent the E*TRADE Litigation by Filing an Identical Case in this District and a Meritless Section 1407 Motion Before the JPML

On November 20, 2024, McKinney and his counsel, RGRD, filed the instant action against E*TRADE. ECF No. 1. The *McKinney* action arises from the very same claims and events that give rise to the *E*TRADE Litigation*. For example, the *McKinney* action and the *E*TRADE Litigation* share:

(a)     ***Overlapping Defendants:*** *Burmin* names MSSB and E*TRADE as defendants, and both *Simmons* and *McKinney* name both of those entities as well as Morgan Stanley. *Burmin*, ECF No. 1 at ¶¶20, 21; *Simmons*, ECF No. 1 at ¶¶11-13; *McKinney*, ECF No. 43 at ¶¶11-13.

(b)     ***The Same Underlying Facts:*** All three actions allege that E*TRADE violated its obligations to customers by paying improperly low rates through the Programs. *See Simmons*, ECF No. 1 at ¶1; *Burmin*, ECF No. 1 at ¶1; *McKinney*, ECF No. 43 at ¶¶2-3. Both *Simmons* and *McKinney* also: (i) source those obligations from E*TRADE's undertaking of an agency and fiduciary relationship with its customers and from the same other provisions of the relevant contractual arrangements (*see Simmons*, ECF No. 1 at ¶¶3, 4; *McKinney*, ECF No. 43 at ¶32); and (ii) reference the same provisions of the same Program disclosures (*see Simmons*, ECF No. 1 at ¶84; *McKinney*, ECF No. 43 at ¶38).

(c)     ***Overlapping Claims:*** All three actions bring claims for breach of contract. *Burmin*, ECF No. 1 at ¶128-132; *Simmons*, ECF No. 1 at ¶¶133-142; *McKinney*, ECF No. 43 at ¶¶69-73. Both *Simmons* and *McKinney* bring claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. *Simmons*, ECF No. 1 at ¶¶143-59; *McKinney*, ECF No. 43 at ¶¶57-63, 74-78, 103-06.

(a)     ***Same or Overlapping Classes***: All three actions represent the same or overlapping classes. *Simmons* is brought on behalf of "Clients of E*TRADE and E*TRADE from Morgan Stanley who had cash deposits or balances in E*TRADE's Cash Sweep Programs or Morgan Stanley's Bank Deposit Program from November 21, 2018, through the end of the conduct alleged herein." *Simmons*, ECF No. 1 at ¶120. *McKinney* is brought on behalf of "all E*TRADE customers who had cash deposits or balances in the Sweep Programs from the time of the E*TRADE Acquisition (October 2, 2020) through present." *McKinney*, ECF No. 43 at ¶49. Thus, the *McKinney* class is encompassed within the *Simmons* class. *Burmin*'s class of retirement account holders is encompassed within the definitions of both *Simmons* and *McKinney*. *Burmin*, ECF No. 1 at ¶124.

Given the near-total congruence of this action with the *E*TRADE Litigation*, the interests of justice, efficiency, and convenience manifestly favor litigation of the claims asserted here together with those in the *E*TRADE Litigation*.

Ignoring this reality, McKinney and RGRD filed the instant action in this inappropriate venue, and on the same day, filed two statements of relatedness, asserting that the instant action is

related to the two actions filed in this District against Morgan Stanley, which at the time had not yet been consolidated. ECF Nos. 1, 6, 7. Also on November 20, 2024, RGRD (which, to reiterate, is also counsel for Plaintiff in *Safron*) asked all parties to agree to request that the instant action be consolidated with *Sherlip* and *Safron*. *Sherlip*, ECF No. 54 at 2.

Neither the *Sherlip* plaintiffs nor any of the defendants in *Sherlip*, *Safron*, and *McKinney* consented to the proposed consolidation of *McKinney* with *Sherlip* and *Safron*. *Id*. at 1-5. The *Sherlip* plaintiffs argued, as discussed above, that judicial efficiency would not be served by such consolidation, and that judicial efficiency would instead be served by transfer to the District of New Jersey for consolidation of *McKinney* with *Burmin*, which was already pending and had progressed significantly. *Id*. at 5.

The instant action was accepted as related on November 25, 2024, but this Court's December 9, 2024, consolidation order ruled that the instant action would ***not*** be consolidated with *Sherlip* and *Safron* at that time. *Sherlip*, ECF No. 57. This Court further ordered that if any of the parties in the instant action wish to move for consolidation or for transfer of *McKinney* to another District, such motions must be filed not later than Friday, December 20, 2024. *Id*.

Even though RGRD had earlier repeatedly requested consolidation of *McKinney* with *Sherlip* (*Sherlip*, ECF No. 48 at 3 n.2; *id.*, ECF No. 54 at 5), it did not move to consolidate or transfer *McKinney* by the December 20 deadline. Instead, the following day, RGRD filed yet ***another*** action—*Gagner v. Morgan Stanley*, No. 24-cv-8860-VEC (S.D.N.Y.)—that essentially copied *McKinney,* including by naming both Morgan Stanley and E*TRADE as defendants. *Gagner*, ECF. No. 1 at ¶¶10-12, 48; *McKinney*, ECF No. 1 at ¶¶10-12.  Thus, by December 21, 2024, RGRD had filed three separate lawsuits against related defendants in this District, all while

reversing position on consolidation of those actions and refusing to participate in the Court's case management process.

On January 7, 2025, the Court consolidated RGRD's two E*TRADE actions, *Gagner* and *McKinney,* with the latter serving as the lead case. *McKinney*, ECF No. 36. In that same order, the Court set a January 14 deadline for the plaintiffs in the consolidated *McKinney* action to file a consolidated complaint (*id.)*—which RGRD did, asserting claims on behalf of E*TRADE customers who had cash balances in the sweeps programs from the time of Morgan Stanley's October 2020 acquisition of E*TRADE. *Cf. McKinney*, ECF No. 43 at ¶¶14-22 *with Gagner*, ECF No. 1 at ¶¶13-21.[2]

Meanwhile, McKinney and Gagner untimely moved to intervene in the District of New Jersey to transfer the earlier-filed *Burmin* case and *Simmons* to the Southern District of New York on January 10, 2025 (*Burmin*, ECF No. 48; *Simmons*, ECF No. 8), three weeks after Plaintiff-Intervenor Simmons originally moved to intervene and transfer *McKinney* consistent with this Court's Order. *McKinney*, ECF No. 36.  Burmin and Simmons filed their respective oppositions to McKinney and Gagner's motions on January 21.  *Burmin*, ECF No. 52; *Simmons*, ECF No. 18.[3]

On January 30, 2025, the Judicial Panel on Multidistrict Litigation (the "JPML") heard argument on RGRD's October 30, 2024 application seeking centralization in the Southern District of New York of dozens of separate cash sweep-related actions currently pending against *11 separate financial institutions* on behalf of distinct classes and subclasses of customers of those

---

[2] On January 16, 2025, the Court granted RGRD's request to file a corrected complaint to fix an error in the consolidated *McKinney* complaint caption, which spelled RGRD's client's name incorrectly. *McKinney*, ECF No. 42.

[3] Judge Salas stayed *Burmin* and *Simmons* on January 28, 2025 pending a decision by the JPML on RGRD's MDL application.  But this Court can determine the question of whether *McKinney* should be transferred now.  *See Morris*, 2024 WL 5125516, at *2 (asking "But why wait?" in response to arguments that transfer should await resolution of the pending MDL motion).

various institutions. *See In re Cash Sweep Programs Contract Litigation*, MDL No. 3136 (J.P.M.L.), ECF No. 1. As the opponents of the MDL (including all the named financial institution defendants that took a position, including Morgan Stanley, and the vast majority of the plaintiffs) argued before the Panel, the MDL should be denied because it amounts to the kind of industry-wide MDL that is repeatedly rejected by the JPML. *See*, *e.g.*, Ex. B at 6:11-7:1, 7:15-18 (JPML repeatedly questioning proponents of MDL about the lack of "collusion alleged in this," including "hasn't the panel been hesitant to centralize in multi-defendant cases where there's no conspiracy or collusion alleged?"); *see also In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 3629067, at *2 (J.P.M.L. Aug. 1, 2024). The underlying actions lack common defendants, facts, and discovery. *See In re Cash Sweep Programs Contract Litigation*, MDL No. 3136 (J.P.M.L.), ECF No. 77 at 13-19. Moreover, there is clearly no need for an MDL when the separate cases against separate defendants have already self-organized. *Id.* at 21-24. Most have leadership appointed or pending, initiated discovery, and are otherwise proceeding without needing to expend resources through litigation in the JPML. *Id.*

In fact, in response to RGRD's MDL application concerning this very case, the JPML specifically instructed the parties to "address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and ***seeking Section 1404 transfer of one or more of the subject cases***)." *In re Cash Sweep Programs Contract Litigation*, MDL No. 3136 (J.P.M.L.), ECF No. 5.

Plaintiff-Intervenor Simmons expects that the JPML will deny the motion and that the stay in the *E\*TRADE Litigation* will be promptly lifted thereafter. Accordingly, Plaintiff-Intervenor Simmons's revised motion to transfer this instant action to the District of New Jersey for consolidation with the pending *E\*TRADE Litigation* is ripe for decision.

## III.    ARGUMENT

### A.    Plaintiff-Intervenor Meets the Standards for Intervention

Plaintiff-Intervenor Simmons readily satisfies the standards for intervention. Federal Rule of Civil Procedure 24(a) provides that, upon timely motion, a party may intervene as of right if that party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Under Rule 24(b), the court may allow anyone who timely moves to intervene in an action so long as they "[have] a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Courts allow intervention in class actions liberally because of the policy expressed by Rule 23, which provides that the "court may issue orders . . . to protect class members and fairly conduct the action." Fed. R. Civ. P. 23(d)(1).[4]

When determining whether to grant either mandatory or permissive intervention, courts in this Circuit evaluate whether the application was timely, the proposed intervenor has an interest in the action that may be impaired by its disposition, and the interest is "protected adequately by the parties to the action." *Harris-Clemons v. Charly Trademarks Ltd.*, 751 F. App'x 83, 84-85 (2d Cir. 2018). These factors all counsel in favor of permitting intervention here.

---

[4] *See Dickstein v. Able Telcom Holding Corp.*, 192 F.R.D. 331, 334 (N.D. Ga. 2000) ("What is at stake here is control over the right to prosecute the class action. Therefore, the motion to intervene should be granted."); *Arthur v. Sallie Mae, Inc.*, 2011 WL 13127651, at *1 (W.D. Wash. June 6, 2011) ("Intervention is allowed liberally in class actions[.]"); Wright, Miller & Kane, 7B Fed. Prac. & Proc. Civ. § 1799 (3d ed.) ("Intervention in a Rule 23 action . . . is directly related to the importance of assuring that the class is adequately represented" and "should be liberally allowed"). Rule 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Plaintiff-Intervenor Simmons adopts here as his pleading his complaint in *Simmons*, which he filed in the District of New Jersey on December 19, 2024. Ex. A. Courts in the Second Circuit allow an intervenor to adopt an already-filed pleading. *See*, *e.g.*, *McCausland v. S'holders Mgmt. Co.*, 52 F.R.D. 521, 524 (S.D.N.Y. 1971).

To start, Plaintiff-Intervenor's motion is timely. Simmons is seeking intervention just one month after the filing of this action—well before the initial pretrial conference, and before Defendants have answered the complaint or discovery has occurred—and the timing of his motion does not prejudice any party. *See Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 88 (S.D.N.Y. 2018) (no prejudice even though "discovery deadlines have come and gone" where intervention will not require amendment of case schedule). Furthermore, this Court has invited motions for transfer of the instant action by December 20, 2024. ECF No. 22.

Moreover, Simmons clearly has an interest in this action that may be impaired by its disposition, since the class in the *E\*TRADE Litigation* encompasses the proposed class in this case and Simmons is prosecuting numerous identical claims, arising out of the same alleged misconduct and facts, as this case. Nor are Plaintiff-Intervenor Simmons' interests in this action adequately represented here. The *Burmin* plaintiffs (with whom Simmons will seek consolidation) filed their action earlier and in a more appropriate District. The parties to the *Burmin* action have already fully briefed Defendants' motion to dismiss and are actively engaged in discovery.

Rather than joining in the effort to prosecute the earlier-filed and more appropriately venued *E\*TRADE Litigation*, McKinney and RGRD belatedly filed the present action in this District. Allowing this later-filed case to proceed on a separate track further delays the effective prosecution of the *E\*TRADE Litigation*, and sows confusion within the class as to who is able to speak for the class members—underscoring that McKinney and RGRD's interests are adverse to those of Simmons and the class and demonstrating the propriety of Simmons' intervention here. Indeed, in *Lourenco*, the district court granted intervention in a late-filed cash sweep action under nearly identical circumstances for these reasons. Ex. C (granting intervention because "allowing this later-filed case to proceed on a separate track undermines the consolidation efforts in

Minnesota, delays prosecution of the Ameriprise cash sweep litigation and sows confusion within the class as to who is able to speak for them"); *see also Morris*, 2024 WL 5125516, at *2 (granting intervention).

**B.     The Court Should Transfer *McKinney* to Join the *E\*TRADE Litigation* in the District of New Jersey**

District courts have "broad discretion" to "transfer venue for the convenience of parties and witnesses, in the interest of justice." *Mitchell v. Annucci*, 2023 WL 8073106, at *2 (2d Cir. Nov. 21, 2023). An action may be transferred to another district pursuant to 28 U.S.C. § 1404(a) if the action "might have [originally] been brought" in the other district and the transfer would be "in the interests of justice" and promote the goals of convenience and efficiency. *See, e.g.*, *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F.Supp.3d 401, 406 (S.D.N.Y. May 12, 2017); *see also IKB Int'l S.A. v. Wilmington Tr. Co.*, 2017 WL 4084052, at *2 (S.D.N.Y. Sept. 14, 2017); *Intermarketing Grp. USA, Inc. v. CenturyLink, Inc.*, No. 17-cv-08234-LJK (S.D.N.Y. Dec. 13, 2017), ECF No. 30 at 2 (finding "no merit at all" to objection to transfer action where the transferee court was "involved in closely related litigation and is better suited to managing all of the litigation in the most expeditious, efficient and effective manner").

It is beyond dispute that the *McKinney* action could have been brought in the District of New Jersey. The *E\*TRADE Litigation* was brought there and involves virtually identical claims and a class that encompasses the one in *McKinney*. Further, all of the Defendants are subject to jurisdiction in the District of New Jersey; E\*TRADE Securities LLC is located in New Jersey and maintains substantial operations there.

Moreover, several factors—including judicial efficiency, the plaintiff's choice of forum, the convenience of witnesses, the locus of operative facts, and the "first-filed" rule—favor transfer. *See, e.g.*, *IKB*, 2017 WL 4084052, at *3.[5]

For these reasons, courts have granted transfer of outlier actions for consolidation with consolidated cash sweep actions already pending against defendant financial institutions under the first-filed rule. In *Lourenco*, Judge Almadani granted transfer of an outlier case from California to Minnesota for consolidation with the already pending cash sweeps action pending against Ameriprise in Minnesota because the earlier-filed case involved "substantially similar issues and parties" and "substantial overlap of issues," such that allowing the later-filed case to "separately proceed in this district poses the exact risk of inconsistent rulings on similar issues, and duplicative, piecemeal, and wasteful litigation that the first-to-file rule is designed to avoid." Ex. C.[6]

**<u>Judicial Efficiency.</u>** The issue of judicial efficiency is of central importance to the transfer analysis. *See, e.g.*, *Hound Partners Offshore Fund, LP v. Valeant Pharm. Int'l, Inc.*, 2018 WL 1940437, at *4 (S.D.N.Y. Apr. 24, 2018) ("Among the most significant factors that can weigh in favor of transfer is coordination with related litigation[.]"). Here, judicial efficiency weighs heavily in favor of transferring the *McKinney* action to the District of New Jersey.[7]

---

[5] In a reversal of their original position (*Sherlip*, ECF No. 54 at 4), Defendants have argued before Judge Salas that the *E\*TRADE Litigation* should be transferred to the Southern District of New York. *See Burmin*, ECF No. 51; *Simmons*, ECF No. 17. But Defendants previously represented to this Court that "[RGRD's] suggestion that *Burmin* should be transferred to the Southern District of New York makes no logical sense." *Sherlip*, ECF No. 54 at 4.

[6] *See also Morris*, 2024 WL 5125516, at *2 (transferring outlier action because "[t]he Schwab Litigation is the first-filed case" and "the judge there consolidated the related actions" already).

[7] *See also Multiwave Sensor v. Sunsight Instruments, LLC*, 2017 WL 1498058, at *8 (S.D.N.Y. Apr. 26, 2017) (ordering transfer and noting "benefits for consolidating related cases in a common forum are often substantial").

Both *Burmin* and *Simmons* are pending in the District of New Jersey, where litigation against E*TRADE has been pending for over a year. Allowing *McKinney* to proceed separately in New York would risk conflicting rulings on a plethora of issues common to this action, and the ones pending in the District of New Jersey. *See Cain v. Twitter, Inc.*, 2017 WL 1489220, at *4 (S.D.N.Y. Apr. 25, 2017) (finding that "the interest of justice strongly favors transfer" because "a transfer could … reduce the potential for conflicting results" and "[c]oordination of … discovery will be greatly facilitated if both actions are before the same court," and observing that there "would be even further significant judicial efficiencies if the two actions are consolidated").

**The Plaintiff's Choice of Forum.** McKinney's unilateral choice to file his claims in the Southern District of New York contradicts the other plaintiffs' prior decisions to file their cases in the District of New Jersey. Accordingly, this factor also weighs in favor of transfer.

**Convenience of Witnesses.** The convenience of witnesses, which is "often…described as the single most important § 1404(a) factor," also favors transfer. *Enigma Software*, 260 F.Supp.3d at 409 (collecting cases). Because E*TRADE Securities LLC is located in New Jersey, many fact witnesses are likely to be located in the District of New Jersey. *See id.* at 410 (convenience of witnesses favors transfer where "most" witnesses are located in transferee district and "there are no essential witnesses who live in this District"); *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F.Supp.2d 735, 743-44 (S.D.N.Y. 2013) (where "the pertinent witnesses are overwhelmingly based in or near [another district], and not New York," factor weighed in favor of transfer "even assuming that several New York-based [party] witnesses would testify").

**The Locus of Operative Facts.** The locus of operative facts is another "primary factor in determining a §1404(a) motion to transfer" that "substantially favors transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New

York." *Enigma Software*, 260 F.Supp.3d at 410. Because this action and the *E\*TRADE Litigation* are both nationwide class actions, and E\*TRADE Securities LLC is located in New Jersey, key events relative to this litigation are far more likely to have occurred in the District of New Jersey than in this District – a fact that supports transfer. *See Jones v. Walgreen Co.*, 463 F.Supp.2d 267, 277-78 (D. Conn. 2006) (granting transfer of class action, noting locus of operative facts was in district of defendant's headquarters, even though plaintiff was located in transferor district).

**The "First-Filed" Rule.** Courts in this Circuit also recognize that, "when two district courts concurrently have before them actions involving the same parties and issues, there is a strong presumption in favor of them forum of the first-filed suit." *Torres v. Sher Tremonte*, 2024 WL 2060112, at \*1 (S.D.N.Y. Apr. 1, 2024); *see also Gottlieb v. U.S. Sec. & Exch. Comm'n*, 723 F. App'x 17, 19 (2d Cir. 2018) (recognizing that "the 'first-filed rule' provides a presumption in favor of the [district] where litigation over the [events at issue] was first initiated"). "Because parties should be free from the vexation of concurrent litigation over the same subject matter, there is a strong presumption that a later lawsuit will be dismissed in favor of the first-filed lawsuit." *Oleg Cassini, Inc. v. Serta, Inc.*, 2012 WL 844284, at \*3 (S.D.N.Y. Mar. 13, 2012). Further, "courts in this Circuit frequently apply the first-filed rule to cases that are *similar*, but not identical." *Thomas v. Apple-Metro, Inc.*, 2015 WL 505384, at \*3 (S.D.N.Y. Feb. 5, 2015) (Caproni, J.) (collecting cases); *see also, e.g.*, *Andreas-Moses v. Hartford Fire Ins. Co.*, 2017 WL 5634709, at \*4 (N.D.N.Y. Oct. 30, 2017), *report and recommendation adopted*, 2017 WL 5634613 (N.D.N.Y. Nov. 22, 2017) (applying first-filed rule to "class action suits filed by different plaintiff classes" when the claims were "substantially similar"); *Jeffrey v. DTG Operations, Inc.*, 2020 WL 1536323, at \*3 (E.D.N.Y. Mar. 31, 2020) (applying first-filed rule where labor law claims on behalf of Hertz employees in first action encompassed "only airport locations" while second lawsuit encompassed

"both airport and non-airport locations"). As one court in this District has explained, "[t]he first-filed rule is inapplicable only where special circumstances exist, such as manipulative or deceptive practices on the part of the first-filing litigant, or where the factors weighing the convenience of transfer and the interest of justice favor litigation in the second-filed district." *Texas Health Mgmt. LLC v. HealthSpring Life & Health Ins. Co. LLC*, 315 F.Supp.3d 814, 816 (S.D.N.Y. 2018).

As *McKinney* plaintiffs have conceded in the *E\*TRADE Litigation*, the *Burmin* action was filed in New Jersey several months before *McKinney*, and *Burmin* concerns the same subject matter. *See Burmin*, ECF No. 48 at 5. Further, the *Burmin* plaintiffs have not engaged in any manipulative or deceptive practices; and convenience and the interest of justice favor transfer to the situs of the first-filed case. Thus, as noted above, the "first-filed rule" supports transfer as well. *Morris*, 2024 WL 5125516, at \*2 (transferring outlier case pursuant to first-filed rule for consolidation with Schwab litigation); *Lourenco*, Ex. C (similar).

### C.    The Dubious Motion Seeking Centralization Before the JPML Further Supports Section 1404 Transfer

Plaintiff-Intervenor's request to transfer the case to the District of New Jersey, where it belongs, should be granted. Denying the motion to transfer will create inefficiencies and prejudice to the plaintiffs, as RGRD's MDL application will likely be denied. To start, the MDL application does not disturb this Court's jurisdiction over *McKinney* or its obligation to rule on a Section 1404(a) transfer request. *See* J.P.M.L. Rule 2.1(d) (a Section 1407 motion "does not affect or suspend . . . pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court.").

To the contrary, ruling on motions to transfer while an MDL is pending **promotes** judicial efficiency and has been repeatedly encouraged by the JPML itself. *See, e.g.*, *Quinn v. JPMorgan Chase Bank, N.A.*, 2020 WL 3472448, at \*1-2 (S.D.N.Y. June 24, 2020) (denying stay pending

MDL application, noting the "many reasons" a stay is harmful, including because the JPML more often than not denies centralization and because ruling on initial motions "helps to move the cases forward" and "ultimately saves the parties time and expense"); *Bartolucci v. 1-800 Contacts, Inv.*, 245 F.Supp.3d 38, 51 (D.D.C. 2017) (granting transfer, noting the "JPML frequently cites the availability of a section 1404(a) transfer when denying a motion for consolidation," and describing benefits of such transfer over Section 1407); *see also In re Cash Sweep Programs Contract Litigation*, MDL No. 3136, ECF No. 5 (J.P.M.L.) (asking parties to "address what steps they have taken to pursue alternatives to centralization (including, but not limited to . . . seeking Section 1404 transfer of one or more of the subject cases)"). Consistent with this guidance, Judge Chappell granted transfer of a late-filed case alleging misconduct pertaining to The Charles Schwab Corp.'s cash sweep programs in the Middle District of Florida to the Central District of California for consolidation with the more advanced *In re Charles Schwab Cash Sweep Litigation*, No. 2:24-cv-07344-HDV-E (C.D. Cal.). *Morris v. The Charles Schwab Corp.*, 2024 WL 5125516, at *2 (M.D. Fla. Dec. 16, 2024) (asking "But why wait?" in response to arguments that transfer should await resolution of the pending MDL motion).

It is particularly appropriate for the Court to rule on Section 1404 transfer here because the MDL application is meritless, as it seeks to centralize cases against separate sets of defendants that do not share common facts or discovery and are at disparate procedural postures. *See, e.g.*, *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F.Supp.3d 1360, 1362 (J.P.M.L. 2020) (denying centralization where "[t]here is no common defendant in these actions—indeed, there are no true multi-defendant cases," there was "little potential for common discovery," and each case involved different contracts). In fact, the JPML has repeatedly and forcefully rejected proposed "industry-wide" MDLs like the one RGRD requests, and has found "industry-wide" MDLs appropriate only

when they involve conspiracies or indivisible harm from industry-wide products or conduct—none of which are currently alleged to be present here. *See In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.,* 2024 WL 3629067 at *2 (denying Section 1407 centralization and noting the JPML has been "cautious" of an "industry-wide MDL" where plaintiffs did "not allege an industry-wide conspiracy or an indivisible injury caused by multiple defendants' products or conduct"). Thus, there are no efficiencies to be gained from granting the MDL application—and, in fact, centralization of these cases will only serve to complicate separate parallel litigation that is already proceeding in an organized and coordinated fashion. *See In re Belviq (Lorcaserin HCl) Prod. Liab. Litig.*, 555 F.Supp.3d 1369, 1370 (J.P.M.L. 2021) (denying consolidation where parties were already coordinating, and the same counsel represented plaintiffs in half the cases); *see also* Ex. B at 6:11-7:1, 7:15-18 (JPML asking RGRD, "hasn't the panel been hesitant to centralize in multi-defendant cases where there's no conspiracy or collusion alleged?").

Considering the MDL application's deficiencies on the merits, Plaintiff-Intervenor respectfully submits that this Court should grant transfer to the District of New Jersey.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff-Intervenor Simmons respectfully requests that the Court grant the relief requested herein.

Dated: February 4, 2025     Respectfully submitted,

               */s/ Salvatore J. Graziano*
               Salvatore J. Graziano
               John Rizio-Hamilton
               Avi Josefson
               Michael D. Blatchley
               Adam H. Wierzbowski
               **BERNSTEIN LITOWITZ BERGER**
                 **& GROSSMANN LLP**
               1251 Avenue of the Americas
               New York, NY 10020

Telephone: (212) 554-1400
salvatore@blbglaw.com
johnr@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com
adam@blbglaw.com

Michael Dell'Angelo*
Alex B. Heller*
Radha Nagamani Raghavan
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
mdellangelo@bm.net
aheller@bm.net
rraghavan@bm.net

Matthew L. Dameron
Clinton J. Mann*
Claire Terrebonne*
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, MO 64105
Telephone: (816) 945-7110
Facsimile: (816) 945-7118
matt@williamsdirks.com
cmann@williamsdirks.com
cterrebonne@williamsdirks.com

*Counsel for Plaintiff and Proposed Intervenor Thomas Simmons*

*admitted *pro hac vice*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Salvatore J. Graziano, write to certify that the foregoing Plaintiffs' and Prroposed-Intervenor Thomas Simmons' Memorandum of Law compiles with the word limit prescribed in this Court's Individual Practices in Civil Cases 4(B)(i) because this document contains 6,257 words.

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano
